Mr. Dale Langston, Director Assessment Coordination Division 1614 West Third Little Rock, Arkansas 72201
Dear Mr. Langston:
This letter is a response to your request for an opinion regarding the disposition of certain revenues associated with delinquent property taxes. You have presented the following specific question:
 Should revenues produced by penalties and costs associated with payments on delinquent property taxes be divided in a pro rata fashion among taxing entities that will share in the property tax, or should all penalties and delinquent charges be deposited to the county general fund for county use?
Although you have not identified the specific revenues to which your question refers, you have cited several statutes that provide for the type of revenues that you have described: A.C.A. §§ 26-26-201, 26-36-201,26-37-109, and 26-37-205. In responding to your question, I will therefore assume that you have inquired about the revenues provided for in those statutes.
It is my opinion that because the applicable statutes contain differing provisions, these revenues must be disposed of in different ways, more specifically discussed below.
The statutes to which you cited in your correspondence provide for the following different types of revenues from delinquencies:
 (1) Revenues generated by the payment of the penalty for failure to assess (A.C.A. § 26-26-201);
 (2) Revenues generated by the payment of the penalty for failure to pay taxes assessed on real and personal property (A.C.A. § 26-36-201); and
 (3) Revenues generated by the payment of the various costs and penalties associated with a redemption of property at the county level (i.e., prior to transfer to the state land commissioner (A.C.A. § 26-37-109 and A.C.A. § 26-37-205(d))).
I recently issued an opinion addressing some of the above-cited statutes, in which I determined that in the absence of express statutory direction, the county quorum court has authority to determine the proper disposition of the county's share of any funds received by the county.See Attorney General Opinion No. 95-217, a copy of which is attached. That opinion was based upon the assumption that the question addressed therein was inquiring only about the disposition of funds received by the county after distribution. You have explicitly inquired about distribution.
Only one of the categories of revenue about which you have inquired is expressly required to be distributed among the taxing units. Revenues generated by the payment of the penalties and costs associated with the redemption of property at the county level must first be distributed among the various taxing units. Both A.C.A. §§ 26-37-109 and 26-37-205(d) explicitly require such a distribution. The two statutes address the same funds. A.C.A. § 26-37-205(d), which is the more specific of the two, states that the funds must be distributed "in the manner and proportion that the taxes would have been distributed if they had been collected in the year due." The statutes governing this type of revenue are silent as to the proper disposition of the county's share of the funds received after distribution. As explained in Op. Att'y Gen. No. 95-217, the county quorum court has the authority to determine that disposition.
Arkansas Code Annotated § 26-26-201(a)(3) expressly provides that the revenues produced by the penalties for failure to assess are to be paid directly into the county general fund. Distribution to other taxing units is not mentioned. I therefore conclude that these revenues need not be distributed.
Arkansas Code Annotated § 26-36-201 is silent as to the disposition of revenues produced by penalties for the failure to pay taxes assessed on real and personal property, generally. In accordance with Op. Att'y Gen. No. 95-217, it is my opinion that in the absence of such express statutory direction, the county quorum court has authority to determine the disposition of those funds.
I therefore conclude as follows:
(1) Revenues generated by the payment of the various costs and penalties associated with the redemption of property at the county level must first be distributed to the various taxing units. After distribution, the county quorum court has authority to determine the disposition of the county's share.
(2) Revenues generated by the payment of penalties for a failure to assess are to be paid directly into the county general fund, and need not be distributed among the taxing units.
(3) Revenues generated by the payment of the penalty for failure to pay taxes assessed on real and personal property must be disposed of in the manner determined by the county quorum court.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Suzanne Antley.
Sincerely,
WINSTON BRYANT Attorney General
Enclosure